G. W. Sheldon & Co., Armour & Co. v. United States (No. 3891)[1]

United States Court of Customs and Patent Appeals, November 4, 1935

*Brown & Carter* (*Allan R. Brown* and *Fred J. Carter* of counsel) for appellants. *Joseph R. Jackson*, Assistant Attorney General (*Daniel I. Auster*, special attorney, of counsel), for the United States.

[Oral argument October 10, 1935, by Mr. Brown and Mr. Jackson]

Before Graham, Presiding Judge, and Bland, Hatfield, Garrett, and Lenroot, Associate Judges

Garrett, Judge, delivered the opinion of the court:

This controversy relates to the statute and regulations made thereunder respecting the marking of imported merchandise.

G. W. Sheldon & Co., as customs broker for Armour & Co., imported from Cuba a quantity of crude glycerine in metal drums, the importation being made under the Tariff Act of 1930. The glycerine was classified, under paragraph 42 of said act, as "Glycerine, crude", and *primarily* assessed with a specific duty of 1 cent per pound. The drums were *primarily* assessed separately from their contents, at 25 per centum ad valorem under the provisions of paragraph 328. Concerning the correctness of the primary duties so assessed no question has been raised.

The issue presented grows out of the fact that as imported there was no marking upon any part of any of the merchandise to indicate the country of origin of either the glycerine or the drums. The Collector of Customs after requiring the drums to be marked before delivery (*vide* section 304 (c), Tariff Act of 1930) assessed additional duties of 10 per centum ad valorem upon the appraised value of both drums and

---

[1] T. D. 48013.

glycerine, upon the theory that such action was required by section 304 of the Tariff Act of 1930, the pertinent provisions of which read:

SEC. 304.   MARKING OF IMPORTED ARTICLES.

(a) MANNER OF MARKING.—Every article imported into the United States, and its immediate container, and the package in which such article is imported, shall be marked, stamped, branded, or labeled, in legible English words, in a conspicuous place, in such manner as to indicate the country of origin of such article, in accordance with such regulations as the Secretary of the Treasury may prescribe.   Such marking, stamping, branding, or labeling shall be as nearly indelible and permanent as the nature of the article will permit.   The Secretary of the Treasury may, by regulations prescribed hereunder, except any article from the requirement of marking, stamping, branding, or labeling if he is satisfied that such article is incapable of being marked, stamped, branded, or labeled or cannot be marked, stamped, branded, or labeled without injury, or except at an expense economically prohibitive of the importation, or that the marking, stamping, branding, or labeling of the immediate container of such article will reasonably indicate the country of origin of such article.

(b) ADDITIONAL DUTIES FOR FAILURE TO MARK.—If at the time of importation any article or its container is not marked, stamped, branded, or labeled in accordance with the requirements of this section, there shall be levied, collected, and paid on such article, unless exported under customs supervision, a duty of 10 per centum of the value of such article, in addition to any other duty imposed by law, or, if such article is free of duty, there shall be levied, collected, and paid a duty of 10 per centum of the value thereof.

Protest against this assessment of additional duties was duly filed by the importer.   The United States Customs Court, Third Division, overruled the protest, and, after a rehearing had been denied, the instant appeal to this court was taken.

As presented to us, the issue is narrower than as presented (except perhaps in the petition for rehearing) to the trial court.   It is stated before us that, in view of our decision in the case of *Givaudan Delawanna, Inc.* v. *United States*, 22 C. C. P. A. (Customs) 115, T. D. 47104, "appellants do not here contend that the marking duty of 10 percent is not applicable to the drums, the containers."   Therefore, we have only to pass upon the legality of the assessment of the 10 per centum additional duty upon the appraised value of the glycerine.

The question so presented is purely one of law and must be determined by the construction of the so-called marking statute, *supra*, together with any valid regulations made thereunder found to be applicable to the importation at issue.

At the time of the importation in question there was in existence a regulation promulgated by the Secretary of the Treasury under the provisions of section 304 (a), *supra*, which excepted from the marking requirement, "crude substances or materials and their containers."

In the *Givaudan Delawanna* case, *supra*, we held that portion of the regulation which exempted the containers of crude substances from marking to be invalid, because unauthorized by statute.

The merchandise there involved consisted of unground cloves, apparently (although the opinion makes no recital as to this and it is not intended to determine the question here) normally entitled to free entry. They were in a loose condition, having no containers other than coverings consisting of grass mattings tied with rope. There is nothing in the opinion to indicate that the coverings were treated for duty purposes as something distinct from the cloves which they contained. We held that the coverings were the immediate containers of the cloves and, since neither the cloves nor the containers were marked, affirmed the judgment of the trial court sustaining the action of the collector in assessing the 10 per centum marking duties.

Our opinion in the *Givaudan Delawanna* case, *supra*, cited our decision in the case of *Zaloom* v. *United States*, 21 C. C. P. A. (Customs) 518, T. D. 46972, where sausage casings incapable of being marked were imported in unmarked barrels. The sausage casings were liquidated by the collector as being free of any primary duty, but the barrels which were found by us, following the trial court, to be the immediate containers, not having been marked when imported, a duty of 10 per centum was levied by the collector upon the value of the merchandise, which assessment was sustained.

It seems obvious that did nothing further appear in the instant case than that merchandise incapable of being marked was imported in containers which were capable of being marked but were not marked the doctrine of the *Zaloom* and *Givaudan Delawanna* cases, *supra*, would control.

To illustrate specifically. Had the glycerine which concededly is incapable of being marked *per se* and which we think falls clearly within the class of articles which section 304, *supra*, authorizes the collector to exempt from marking by regulation, been imported, let us say, in unmarked barrels not separately dutiable, as was the case with the sausage casings involved in the *Zaloom* case, *supra*, the situation here would, in principle, be on all fours with the situation there.

But we have here a different state of facts.

Neither the barrel containers involved in the *Zaloom* case, *supra*, nor the grass matting coverings involved in the *Givaudan Delawanna* case, *supra*, appear to have been treated as tariff entities separate from the articles of merchandise which they respectively contained, and the natural presumption is that those containers entered into the "marking" duty equation only as part of the final appraised value of the normally duty free merchandise which they contained. *Vide* section 402, Tariff Act of 1930, defining "Value."

In the case at bar we are confronted with a different situation. Here the glycerine is subject to a *per se* primary duty and the containers are also subject to a *per se* primary duty, each duty being

wholly independent of the other. In other words, the importation comprised two classes of merchandise not only entirely different in fact, but different in a tariff sense by the express provisions of the statute.

While the actual liquidation of the entry in the case is not a part of the record before us, we think sufficient facts are shown to justify the conclusion that the additional duties, assessed because of the unmarked condition of the merchandise, were levied upon the entities separately. That is to say, the value of the glycerine was determined separately from the drums and 10 per centum duty based upon such value was levied in addition to the specific primary duty of 1 cent per pound, while a 10 per centum duty, in addition to the 25 per centum ad valorem primary duty was levied upon the drums upon the basis of their separately appraised value.

In other words, we think it fairly inferable from the record that in appraising the value of the glycerine for the purpose of levying the marking duty the "cost of the containers" (alluded to in different paragraphs of section 402, Tariff Act of 1930) was not included as a part of such appraised value, they being separately dutiable and separately appraised.

However this may have been, the question in the final analysis seems to us to be resolved to this: In applying the marking statute, in the light of such constructions of it as the courts have heretofore made, should there be any distinction between cases where merchandise, incapable of being marked *per se*, is imported in containers, capable of being marked but not marked, which have a separate tariff status (that is are subject to duty not as containers of merchandise but as separate entities) and those cases in which the importations are made in containers that do not have a separate tariff status?

We are unable to discern any reason based upon sound principle why such a distinction should or properly may be made under the provisions of the marking statute.

Different phases of the statute and regulations made thereunder have been before us in the *Zaloom* and *Givaudan Delawanna* cases, *supra*, with still another phase in the case of *Kraft Phenix Cheese Corp.* v. *United States*, 22 C. P. C. A. (Customs) 111, T. D. 47103. A review of those cases is not deemed necessary here.

The reasons underlying the marking statute are there recited and discussed, and we need not repeat them. In the *Kraft Phenix Cheese Corp.* case, *supra*, we pointed out that under the marking paragraph of the Tariff Act of 1922 there was no imposition of additional duty for failure to mark the container in cases where the article therein contained was such that it could not be marked, and drew attention to the fact that section 304, *supra*, of the act of 1930,

makes it more necessary for the importer to so mark his goods that, when they come into the commerce of the country, they may be readily distinguished.

The majority of the court there held that in a case where both the container and the article contained are capable of being marked it is sufficient if one of them be marked. In the other cases already cited we held quite distinctly that marking the container is required when the merchandise therein contained is not capable of being marked.

As has been said, the glycerine here involved was not capable of being marked, but its containers were capable of being marked so as clearly to show the country of origin of their contents. It is difficult to conceive of a liquid substance being imported in containers which could not be marked. While the containers here, the drums, were separately dutiable *per se*, even though filled, nevertheless, as imported here, they occupied the same physical relation to the merchandise in them as a barrel or some other container not separately dutiable would have had. No convincing reason has been presented why marking should be excused in the one case and required in the other.

The judgment of the United States Customs Court is *affirmed.*